Appellant, April Thompson, appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, terminating her parental rights and responsibilities and granting permanent custody of her son, Micah Thompson, to the Clermont County Department of Human Services ("CCDHS"). The judgment of the trial court is affirmed.
Micah Thompson was born on April 19, 1997, when appellant was sixteen years old. His father was never identified. In January 1998, appellant was adjudicated a delinquent child based on a shoplifting charge. As a result of the adjudication, appellant and Micah were placed with a foster family.
In September 1998, appellant's foster parents reported to CCDHS that Micah had been physically abused by appellant. The abuse was substantiated and Micah was adjudicated an abused child. CCDHS was awarded temporary custody of Micah on October 22, 1998. Micah continued to live in the foster home with appellant, with the condition that the foster parents supervise all of appellant's interactions with Micah. After a series of arguments with her foster parents, appellant requested that she be removed from the home. She was placed with another foster family while Micah remained in the original foster home. Micah was placed in a second foster home in January 2000.
CCDHS filed a motion seeking permanent custody of Micah on August 17, 1999. After a hearing, the trial court determined that Micah could not or should not be placed with appellant within a reasonable time. A separate best interest hearing was held. At the conclusion of the hearing, the trial court determined that it was in the best interest of Micah to grant CCDHS permanent custody and to terminate appellant's parental rights and responsibilities. Appellant appeals, raising a single assignment of error:
 THE TRIAL COURT LACKED SUFFICIENT EVIDENCE TO GRANT PERMANENT CUSTODY OF THE APPELLANT'S CHILD TO THE AGENCY.
In her assignment of error, appellant first contends that the trial court erred by finding that it is in Micah's best interest that CCDHS be granted permanent custody.
Because a parent's constitutionally protected liberty interest is at stake in a permanent custody case, due process requires that the state prove by clear and convincing evidence that applicable statutory standards have been met. Santosky v. Kramer (1982), 455 U.S. 745, 769,102 S.Ct. 1388, 1397. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479.
When determining whether the termination of parental rights is in a child's best interest, a trial court is required to examine all relevant factors, including but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D). The trial court made specific findings relating to these factors and concluded that Micah's best interest was served by granting permanent custody to CCDHS.
At the time of the hearing, Micah had been in foster care for more than one year. Through the involvement of his extended biological family in appellant's visitation, Micah does have a semblance of a relationship with them. However, none of Micah's relatives were viable placement candidates. We also note that Micah's guardian ad litem recommended that CCDHS be granted permanent custody.
CCDHS caseworker Kim Carman testified that Micah has adjusted well to his foster home and identifies his foster parents as his parents. Carman also testified that Micah has a need for a legally secure placement, and that the best possibility for securing such a placement is through a grant of permanent custody to CCDHS. Without a grant of permanent custody, Carman testified that a legally secure placement would be questionable.
Based on the foregoing, we find that the trial court's finding that it is in Micah's best interest to grant CCDHS permanent custody is amply supported by clear and convincing evidence.
Appellant also contends that the trial court's finding that Micah cannot or should not be placed with appellant within a reasonable time is not supported by clear and convincing evidence.
Pursuant to R.C. 2151.414(B)(1), the trial court must determine by clear and convincing evidence whether the child can be placed with a parent within a reasonable time. The trial court is required to enter a finding that the child cannot or should not be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply.
In making the finding that Micah could not or should not be placed with appellant within a reasonable time, the trial court specifically considered R.C. 2151.414(E)(1), which states as follows:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Although acknowledging the degree of stability that appellant had established in the several months preceding the hearing, the trial court found that appellant had continuously and repeatedly failed to substantially remedy the conditions causing Micah to be placed outside her home.
The case plan developed for appellant required that she undergo mental health and parenting assessments, participate in therapy and parenting classes, and establish steady employment and permanent housing.
Appellant left her foster home and moved back into her mother's home in January 1999. However, her relationship with her mother remained unstable, and appellant moved out of her mother's home on two occasions, only to return a short time later. More recently, appellant's relationship with her mother has improved. She currently lives with her mother and has applied for public housing.
Appellant has been regularly employed, although not continuously employed by any one employer during the course of this case. There was at most a three week lapse between each of her jobs, which she left for a variety of reasons. She worked for two different McDonald's restaurants, provided childcare for a roommate, and worked for FACS, a company involved with processing credit applications. Appellant currently works approximately thirty hours weekly for Burke Marketing Research and is enrolled in a vocational education program.
Appellant's visitation with Micah has been at times erratic. From January 1999 to May 1999, she was relatively consistent in her visits. After that time, when she was no longer living with her mother, her visits became more sporadic. Appellant explained that this was due, in part, to her job at FACS. Of the forty-one possible visits, appellant attended twenty-four. She was often significantly late for the visits she did attend. From October 1999, when she moved back into her mother's home, to January 2000, the time of the hearing, appellant's visits were more regular.
Appellant underwent several mental health evaluations and was involved in therapy and several parenting programs. Jackie Ranieri of the Infant Toddler Home Visitor's Project testified that appellant was demanding of Micah's attention and resistant to any parenting suggestions. Ranieri testified that she did not feel appellant's parenting skills improved over the course of her involvement. Linda Winstrup of Child Focus, in her psychological evaluation of appellant, found that appellant was unable to appropriately manage her anger and refused to take responsibility for her own behavior. Winstrup stated that appellant's past was the best indicator of her future behavior, and that unless appellant was able to make great strides in treatment, she would continue to have problems parenting.
Appellant participated in parenting classes through Child Focus which were led by Ruth Mistic. Appellant attended twenty parenting classes, cancelled three individual appointments with Mistic, and failed to attend five other parenting classes. In a letter to CCDHS, Mistic indicated that appellant had made progress on managing her anger, although Mistic remained concerned about appellant's unstable support network. Mistic recommended that appellant continue with individual counseling. However, appellant testified that she chooses not to participate in further individual counseling because she feels counseling would only benefit her if Micah could also attend, an impossibility under the custody order.
Based on a thorough review of the record, we find that the trial court's determination that Micah should not and could not be placed with appellant within a reasonable time is supported by clear and convincing evidence. The assignment of error is overruled.
 ___________________________ VALEN, J.
YOUNG, P.J., and WALSH, J., concur.